UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WHITE COAT WASTE PROJECT
c/o HVJT
15405 John Marshall Hwy
Haymarket, VA 20169

     Plaintiff,

          v.

RANDY CLARKE
600 5th Street, NW
Washington, DC 20001,

     Defendant.

Civ. No. 23-cv-1866

**Amended Complaint for Declaratory and Injunctive Relief**

1.     The Washington Metropolitan Area Transit Authority, commonly referred to as WMATA, is the public transportation operator for Washington, D.C., and the surrounding metropolitan area. Defendant Randy Clarke is the General Manager and Chief Executive Officer of WMATA.

2.     WMATA provides advertising space—in its stations, in its trains, and in and on its buses—that allow the great majority of advertisers to publish advertisements. But WMATA purports to prohibit advertising "intended to influence members of the public regarding an issue on which there are varying opinions" and that is "intended to influence public policy," among other restrictions.

3.     Plaintiff White Coat Waste Project would like to buy advertising space from WMATA for White Coat's advertisements. WMATA rejected White Coat's proposed advertisements under three of its Commercial Advertising Guidelines.

4.     The WMATA advertising guidelines challenged here violate both the First and Fifth Amendment. By rejecting White Coat's ads, WMATA, through Defendant Clarke, violated White Coat's First, Fifth, and Fourteenth Amendment rights.

## Jurisdiction and Venue

5.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 as this is an action to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States. White Coat seeks remedies directly under the United States Constitution, as well as under 42 U.S.C. §§ 1983 and 1988 (protection of constitutional rights), Federal Rule of Civil Procedure 65 (injunctive relief), and 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57 (declaratory relief).

6.     Venue is proper under 28 U.S.C. § 1391 because WMATA's acts in violation of the United States Constitution have arisen and continue to arise in the District of Columbia.

## Parties

7.     Plaintiff White Coat Waste Project, Inc. is a bipartisan non-profit taxpayer watchdog organization pursuant to Section 501(c)(3) of the Internal Revenue Code, with its headquarters located at 15405 John Marshall Hwy, Haymarket, VA 20169. White Coat's mission is to unite animal-lovers and liberty-lovers to expose and end wasteful taxpayer-funded animal experiments.

8.      Defendant Washington Metropolitan Area Transit Authority is a governmental entity created by an interstate compact between Maryland, Virginia, and the District of Columbia.

9.      Defendant Randy Clarke is the General Manager of WMATA. The General Manager is WMATA's chief administrative officer. As the General Manager of WMATA, Clarke has final decisionmaking authority on all aspects of WMATA's operations, including advertising in the system and WMATA's advertising policy. He is sued in his official capacity.

**Facts**

<u>WMATA's Advertising Policies and Practices</u>

10.     WMATA sells advertising opportunities in WMATA subway cars, in and on WMATA buses, and inside WMATA subway stations.

11.     WMATA has two sets of policies that govern advertising in its system. The first governs so-called Commercial Advertising. The second governs so-called Public Service Advertising.

12.     These two policies operate independently. In other words, advertising that is approved under the Commercial advertising policy does not need to meet the requirements of the Public Service Advertising policy, and conversely, advertising that is approved under the Public Service Advertising policy does not need to meet the requirements of the Commercial Advertising policy.

13.     Prior to the Spring of 2015, WMATA permitted various types of "issue-oriented advertising" under its Commercial Advertising policy. But in May 2015,

WMATA's Board of Directors approved a resolution that purported to temporarily close WMATA's advertising spaces to political, issue advocacy, and religious advertising under the Commercial Advertising policy.

14. In November 2015, WMATA's Board of Directors approved a resolution extending the ban on issue-oriented advertising under the Commercial Advertising policy indefinitely.

15. The 2015 amendment to WMATA's Commercial Advertising policy still governs WMATA's advertising practices for so-called Commercial Advertising. Three of the prohibitions in the Commercial Advertising policy are relevant to this lawsuit.

16. The first is WMATA's Commercial Advertising Guideline 9: "Advertising intended to influence members of the public regarding an issue on which there are varying opinions are prohibited."

17. The second is WMATA's Commercial Advertising Guideline 13: "Advertisements that support or oppose an industry position or industry goal without any direct commercial benefit to the advertiser are prohibited."

18. And the third is WMATA's Commercial Advertising Guideline 14: "Advertisements that are intended to influence public policy are prohibited."

19. So-called Public Service Advertising is subject to a different set of rules. The Public Service Advertising policy applies to advertisings from the District of Columbia, the Commonwealth of Virginia, and the State of Maryland ("WMATA's jurisdictions as defined in the WMATA Compact"), the federal government, and the

respective government agencies of the District of Columbia, the Commonwealth of
Virginia, the State of Maryland, and the federal government.

20.     The Public Service Advertising policy also applies to advertising by
nonprofit organizations "classified as 501(c)(3) tax exempt organizations" if the
District of Columbia, the Commonwealth of Virginia, the State of Maryland or
federal government (or the respective agencies of any of them) jointly-sponsor the
nonprofit's advertisement. Such advertising must "relate to community, art,
cultural, educational, health, and similar events, programs, and/or messages of the
WMATA jurisdictions or the Federal Government only, and shall be non-commercial
and non-partisan politically."

21.     The restrictions in the Commercial Advertising Guidelines 9, 13, and
14 do not appear in WMATA's Guidelines for Public Service Advertising and do not
apply to so-called Public Service Advertising.

22.     WMATA has not set out any formal regulations to direct the
implementation or interpretation of these either set of advertising policies. Nor is
there any further published advertiser guidance about what speech is forbidden
under the either set of advertising policies.

23.     WMATA uses the services of an out-of-home media company, Outfront
Media, to manage its advertising sales and placement. Prospective WMATA
advertisers submit proposed advertisements to Outfront.

24.     WMATA does not apply its advertising policies to all potential
advertisements that seek to run in its system. Instead, Outfront does an initial

review of a prospective advertisement to determine whether it complies with WMATA's various guidelines.

25. Outfront is authorized to approve and run advertising that it finds to be in compliance with WMATA's guidelines. If Outfront believes a prospective advertisement complies with WMATA's advertising policies, it approves the ads itself.

26. If Outfront believes that an ad may violate WMATA's various advertising policies, it forwards the proposed advertisement to WMATA for review.

27. For those proposed ads that do reach WMATA, it has a three-employee panel that reviews prospective advertisements to determine if the advertisement complies with WMATA's various advertising policies.

28. As part of WMATA's review, the WMATA panel may review any website that is provided on the advertisement either in text or in the form of a QR code. WMATA may then apply its various advertising guidelines to the website, providing WMATA authority to reject a proposed advertisement if any page on the website violates WMATA's various guidelines. No written standards or guidance instruct WMATA reviewers when to go outside an ad's four corners or how to conduct such a review.

29. This detail, which is not evident from WMATA's written advertising policies, vastly expands the scope of WMATA's advertising restrictions.

30.    Enforcement of the WMATA's advertising policies are left entirely to the discretion of WMATA and its General Manager on a case-by-case basis, at least for those proposed advertisement that make it to WMATA from Outfront.

31.    WMATA also allows advertising displays inside of its subway stations that on property that WMATA does not own but that bear no indication that WMATA does not own them.  Such advertising is not subject to WMATA's various guidelines and escape WMATA's review. The general public has no way of determining whether such advertising, within a WMATA subway station, is owned by WMATA or not.

<u>White Coat's Proposed Ads</u>

32.    Consistent with that mission, White Coat sought to run the following four advertisements:









33.    On April 13, 2023, White Coat contacted Outfront Media seeking to run the four ads.

34.    On April 28, 2023, Outfront informed White Coat that WMATA rejected the first three ads. Outfront informed White Coat that WMATA's

Panel has reviewed the attached ads and determined that with respect to the first three (filenames cokehounds, hamster, and logo) - they are prohibited by guidelines 9, 13, and 14 of WMATA's Commercial Advertising Guidelines.

With respect to the fourth (filename shopnow) - we are unable to review this ad because the QR code goes to a placeholder page. If they resubmit after updating the QR code link, we can review in advance of the next regularly scheduled meeting.

35.    On May 22, 2023, White Coat submitted a revised version of the fourth advertisement with a QR code that linked to a webpage where users could purchase a t-shirt with the White Coat's "Stop Government Animal Experiments" logo.

36.     On May 26, 2023, Outfront informed White Coat that WMATA approved the revised fourth advertisement.

37.     White Coat's rejected advertisements were rejected under WMATA's Commercial Advertising Guidelines 9 ("Advertising intended to influence members of the public regarding an issue on which there are varying opinions are prohibited."), 13 ("Advertisements that support or oppose an industry position or industry goal without any direct commercial benefit to the advertiser are prohibited." ), and 14 ("Advertisements that are intended to influence public policy are prohibited.").

38.     WMATA applied it Commercial Advertising Guidelines despite none of White Coat's rejected advertisements promoting or encouraging any type of commercial transaction.

39.     WMATA applied it Commercial Advertising Guidelines 13 despite none of White Coat's rejected advertisements supporting or opposing any "industry position" (they oppose government, not industry).

40.     White Coat continues to wish to place the same advertisements, and similar advertisements, in WMATA advertising spaces.

<u>WMATA'S Arbitrary Enforcement and Practices</u>

41.     WMATA, acting through its General Manager, Defendant Clarke, applies its Advertising Guidelines in an arbitrary, inconsistent, and unreasonable manner. That is not surprising because the Guidelines themselves are incapable of reasoned application. In light of their vague standards, the Guidelines effectively

vest unfettered discretion in WMATA and its General Manager to determine which speech is permissible and which is not, resulting in arbitrary and discriminatory application of WMATA's Guidelines.

42.    This arbitrary, inconsistent, and unreasonable application of WMATA's advertising guidelines is shown by WMATA's application of its guidelines since it amended its Commercial Advertising Policy in 2015, as detailed below.

43.    WMATA rejected an advertisement proposed by the American Civil Liberties Union Foundation containing the text of the First Amendment in English, Spanish or Arabic with the ACLU's logo over the slogan "We the People" under its Commercial Advertising Guideline 9 ("Advertising intended to influence members of the public regarding an issue on which there are varying opinions are prohibited").

44.    WMATA rejected an advertisement by American Civil Liberties Foundation advertising their nationwide 2018 Membership Conference. The text of the advertisement read "YOU BELONG HERE[.] ACLU Conference[:] Walter E. Washington Conference Center[;] Washington D.C.[;] June 10–12[.] Featuring[: (list of speakers).] Don't Miss out: aclu.org/DC[.] ACLU[.]" WMATA rejected the ad under its Commercial Advertising Guidelines 9 ("'Advertisements intended to influence members of the public regarding an issue on which there are varying opinions are prohibited.") and 14 ("Advertisements that are intended to influence public policy are prohibited."). The ACLU, through its media buyer, asked for a more detailed explanation of why its advertisement was rejected. WMATA provided no additional explanation.

45.     WMATA approved and ran an advertisement by the University of the District of Columbia featuring a crowd of demonstrators holding signs saying "Black Lives Matter," "Stand for Justice," and "Hands Out! Fists Up! Ready to Fight" around an image of the Black Power fist.

46.     WMATA approved and ran advertisements by Lockheed Martin and Boeing advertising the capabilities of new military aircraft.

47.     WMATA approved and ran an advertisement for Squirt.org, an online service for gay and bisexual men, telling the public to "Visit Squirt.org on your mobile to hookup today." The Squirt.org website, the URL of which is featured in the advertisement, caters to gay and bisexual men seeking to "cruise"—"the ancient art of men seeking men for anonymous sex in public." https://www.squirt.org/gay-cruising.

48.     WMATA approved and ran advertising for the Social Justice School, advertising the school as a place "WHERE SCHOLAR MEETS ACTIVIST." The Social Justice School is a middle school seeking "to catalyze an integrated community of middle-school learners to be scholar-activists who are designers of a more just world." The advertisement includes the URLA of the school's website (thesocialjusticeschool.org), which emphasizes the school's focus on "liberatory design thinking" and "solutions to social justice issues that plague our community." See Social Justice School, Our Story, https://www.thesocialjusticeschool.org/about.

49.     WMATA approved and ran advertisements for the University of Maryland that said, "INCLUSION IS THE SOLUTION," and "WE HAVE THE

FORMULA FOR PROGRESS." The advertisement includes a URL that takes viewers to the university's website devoted to its "Fearlessly Forward" campaign, which the University describes there as a "plan [that] is rooted in the principles of values-driven excellence, diversity, equity and inclusion, impact, innovation, collaboration and service to humanity." See Darryl J. Pines, Fearlessly Forward, Univ. of Md., https://president.umd.edu/articles/fearlessly-forward.

50.    WMATA approved and ran an advertisement for purchasing Plan B from the service Instacart, advertising that customers can "Buy Plan B without ever stepping foot in a store." The advertisement contained a QR code that, when scanned, enables viewers to place Instacart orders for Plan B. The advertisement instructs viewers to "Take Plan B emergency contraception as directed within 72 hours after unprotected sex."

51.    WMATA approved and ran an advertisement by Carafem—a nonprofit corporation that provides convenient and professional abortion care and family planning services through a network of health centers—for medical abortion pills. The advertisement read: "Abortion. Yeah, we do that. Birth Control? Yeah. We do that too. Affordable. Convenient. 24/7 Support."

52.    But WMATA rejected another advertisement for medical abortion pills that read "10-Week-After-Pill[.] For Abortion Up to 10 Weeks. $450. Fast. Private. Carafem.org." WMATA rejected the advertisement under its Commercial Advertising Guidelines 9 ("Advertisements intended to influence members of the public regarding an issue on which there are varying opinions are prohibited.") and

4 ("Medical and health-related messages will be accepted only from government health organizations, or if the substance of the message is currently accepted by the American Medical Association and/or the Food and Drug Administration.")—despite the fact that the drug is approved by the FDA. Outfront even expressed puzzlement at WMATA's rejection, telling Carfem, "Quite honestly, we do not see why this was not approved, your ad doesn't appear to be in violation of any of the guidelines, especially #4 & #9 that was the basis for the rejection."

53.    WMATA both approved *and* rejected an advertisement for the book *Dangerous* by Milo Yiannopoulos. Yiannopolous is and was at the time a public figure known for his provocative, far-right opinions about society, culture, and politics. Yiannopolous carries out his activities as an author and public speaker through his corporation, Milo Worldwide LLC.  Milo Worldwide sought to run an advertisements for Yiannopoulos's book that featured a picture of Yiannopoulos's face, the book's title ("Dangerous), "Pre-Order Now," and one of four short quotations from different book reviews: "'The most hated man on the Internet' - The Nation;" "'The ultimate troll' – Fusion;" "'The Kanye West of Journalism' – Red Alert;" and "'Internet Supervillain' – Out Magazine."

54.    WMATA initially approved and ran the advertisements for *Dangerous*. WMATA riders complained. At first, WMATA's Customer Relations staff responded to complaints by writing: "The display of this ad is consistent with Metro's policy of remaining content-neutral when accepting advertising. Although Metro understands that feelings and perceptions will vary among individuals within the

community, we cannot reject advertising because some find it inappropriate or offensive." After complaints piled up, WMATA switched course. It informed Milo Worldwide that the advertisements were being removed under Guidelines 9 ("Advertisements intended to influence members of the public regarding an issue on which there are varying opinions are prohibited.") and 14 ("Advertisements that are intended to influence public policy are prohibited.").

55.    WMATA approved and ran an advertisement for a play called "The Originalist," about the late Supreme Court Justice Antonin Scalia. The play contains many passages in which the Scalia character advocates his conservative judicial philosophy.

56.    WMATA approved and ran an advertisement for Power to the Patients, a nonprofit organization dedicated to promoting transparency in hospital pricing. The ad read, "WE ~~NEED~~ DEMAND HOSPITAL PRICES," with "NEED" deliberately struck through. The ad's other text read "'When we can't see or compare prices, hospital and insurance companies charge us whatever they want. They're robbing us!' - FAT JOE," and featured a picture of musician Fat Joe.  The ad also contained a link to the organization's website, powertothepatients.org, and a QR code linking to the website, which addresses the need for "real prices and transparency in healthcare" as required by existing federal law.

57.    WMATA approved and ran an advertisement for an organization called World Beyond War, a nonprofit organization that describes itself as a "global movement to end all wars." See Who We Are, https://worldbeyondwar.org/who. The

15

ads contained the message "Peace on Earth," and contained the organization's logo

and website address, worldbeyondwar.org. World Beyond War's website explains

that it is "a global nonviolent movement to end war and establish a just and

sustainable peace." According to the website, the organization "raises funds to—

independently and in coalition with others—put up pro-peace and anti-war

billboards all over the world." See Billboards Project,

https://worldbeyondwar.org/billboardsproject/. World Beyond War's current major

campaign seeks to confront what it calls a genocide in Gaza. See GENOCIDE,

https://worldbeyondwar.org/gaza-genocide/.

58.    WMATA approved and ran an advertisement for the Catholic

University of America, a pontifical university of the Roman Catholic Church, which

included the tagline "Every story is a journey of the spirit," with the university's

logo and motto, "Deus Lux Mea Est," a Latin phrase which translates to "God is my

light." The advertisement included a URL for the university's website, catholic.edu.

At that website, viewers can learn about the university's "faith-filled community,"

daily masses offered on campus, and the university's "first principle" that "[t]he

teaching of the University should be faithfully Catholic, conformed in all things to

the creed of the Church and the decisions of the Holy See."

59.    WMATA approved and ran an advertisement for the musical, The

Book of Mormon. The Book of Mormon is a well-known Broadway musical, which

rather sharply lampoons religious practices and, in particular, the practices of the

Church of Jesus Christ of the Latter-Day Saints. The musical has been criticized as

blasphemous, with a song that includes the lyrics "Fuck you God in the ass, mouth, and cunt."

60.    WMATA rejected two proposed advertisements by Wallbuilders, a self-described Christian organization dedicated to restoring the moral, religious, and constitutional foundations upon which America was built. Each advertisement features a famous painting relating to the nation's founding. The first depicted a famous image of George Washington kneeling in prayer at Valley Forge, from the original painting by Henry Brueckner. The second depicted Howard Chandler Christy's 1940 painting of the signing of the U.S. Constitution. Each advertisement also prominently stated, "CHRISTIAN? TO FIND OUT ABOUT THE FAITH OF OUR FOUNDERS, GO TO WALLBUILDERS.COM." Each advertisement included WallBuilders' logo in the top left corner and a QR code in the bottom right corner that, when scanned, took the viewer to a specific page of WallBuilders' website. WMATA rejected both advertisements under its Commercial Advertising Guideline 9 ("Advertisements intended to influence members of the public regarding an issue on which there are varying opinions are prohibited.").

61.    WallBuilders requested clarification regarding the denial of its ads under Guideline 9. Wallbuilders indicated that Guideline 9 appeared to be vague and requested a response. WMATA did not respond.

62.    Without the benefit of any further guidance from WMATA, Wallbuilders tried again. They kept the original artwork but stripped out the text that read "CHRISTIAN? TO FIND OUT ABOUT THE FAITH OF OUR

FOUNDERS, GO TO WALLBUILDERS.COM" and replaced it with simply "VISIT WALLBUILDERS.COM" and the original QR code. WMATA again rejected both advertisements under Guideline 9 of its Commercial Advertising Policy. WMATA provided no further explanation of the "issue" that caused the advertisement to be rejected.

63.    WMATA rejected a series of advertisement by People for the Ethical Treatment of Animals, or PETA. The first depicted a pig with text reading, "I'm ME, Not MEAT. See the Individual. Go Vegan." Outfront informed PETA that the advertisement would likely be rejected because it included the "Go Vegan" message. Outfront also informed PETA that removing "Go Vegan" and/or adding a "commercial value" such as a donation solicitation or an offer to purchase PETA's gift products might lead to WMATA's acceptance of the advertisement. PETA's second ad depicted a cow and her calf, with text reading, "Not your mom? Not your milk! DeCalf Your Coffee! Choose almond or soy milk." The third depicted a veteran facing the viewer, with accompanying text reading, "'I didn't serve my country to stab goats.' Department of Defense: End 'Live Tissue Training.'" WMATA rejected each advertisement under its Commercial Advertising Guideline 9 ("Advertisements intended to influence members of the public regarding an issue on which there are varying opinions are prohibited.") and Guideline 14 ("Advertisements that are intended to influence public policy are prohibited.").

64.    WMATA approved and ran an advertisement, apparently from the Department of Motor Vehicles,  celebrating Earth Day. The advertisements were

the result of a contest and resulted in displays that featured drawings from local school children. The purpose of the advertisements, according to Defendant Clarke, was "to celebrate the role public transportation plays in creating a more sustainable, healthier and cleaner environment."

65.    WMATA approved and ran an advertisement from DC Health encouraging the public to get vaccinated with an updated COVID vaccine.

66.    WMATA approved and ran an advertisement from Montgomery County, Maryland, advertising its Business Recycling Program. The advertisement instruct readers to "Make it your BUSINESS to recycle right." It includes a URL to Montgomery County's website, where viewers are encouraged to recycle and to learn about Montgomery County's aim to achieve zero waste.

67.    WMATA regularly approves and runs advertisements for alcohol products.

68.    WMATA regularly approves and runs advertisements for sports betting and other online gambling.

69.    In October 2023, a large digital advertisement for the Brennan Center for Justice ran inside WMATA's Metro Center station urging readers to "DEMAND SUPREME COURT TERM LIMITS." The advertisement's text read, "TOO MUCH TIME. TOO MUCH POWER," and featured a fractured hand holding a gavel. The bottom of the advertisement included a link to the Brennan Center's website, which advocates for term limits for Supreme Court Justices. The Brennan Center describes itself as a "an independent, nonpartisan law and policy organization that

works to reform, revitalize, and when necessary, defend our country's systems of democracy and justice." In this role, the Brennan Center acts as, among other things, "an advocacy group, fighting in court and working with elected officials to advance legislation." Apparently this advertisement, within the Metro Center station, is owned and operated not by WMATA but a private party, thus bypassing WMATA's various advertising policies despite being within WMATA's subway station.

70.    WMATA's erratic approval and denial of the above advertisements shows the WMATA's advertising prohibitions challenged here, and WMATA's application of those prohibitions, are unreasonable. Virtually every advertisement described and approved above seeks "to influence members of the public regarding an issue on which there are varying opinions," in violation of Commercial Advertising Guideline 9. Numerous advertisement described and approved above "support or oppose an industry position or industry goal without any direct commercial benefit to the advertiser," in violation of Commercial Advertising Guideline 9. And numerous advertisements described and approved above "intend to influence public policy," in violation of Guideline 14. At the same time, some of the advertisements above that WMATA rejected appear to violate none of WMATA's advertising prohibitions.

71.    WMATA's approvals and denials of the above advertisements also show WMATA's Commercial Advertising Guidelines are not a functional equivalent of a ban on noncommercial advertising. WMATA approved and ran the Power to the

Patients ad, the World Beyond War ad, the Earth Day ad, and the Business
Recycling Program ad despite none of those advertisement proposing any
commercial transaction. And it rejected the advertisement for the ACLU's
conference, Yiannopolous's book, and Carefem's medication despite each seeking to
sell something.

72.    The unreasonableness of WMATA's challenged Commercial
Advertising Guidelines is also shown by the fact that some advertisements
completely escape application of the guidelines. Under WMATA's Public Service
Advertising policy, nonprofit speakers can evade any of the challenged Commercial
Advertising Guidelines by finding a federal, DC, Virginia, or Maryland agency that
is willing to co-sponsor their message. This policy allows messages to run so long as
they are endorsed and approved by a government actors but rejects messages the
lack such government approval.

73.    Further, advertisers can advertise within WMATA subway stations
but evade WMATA's challenged Commercial Advertising Guidelines if they are able
to identify and run advertisements on spaces within the WMATA subway stations
that WMATA does not own and control.

74.    WMATA's unwritten policy of sometimes reviewing a potential
advertisers' website and applying is Commercial Advertising Guidelines to a portion
or the entirety of the advertisers' website further underscores the unreasonableness
of the challenged Guidelines. WMATA officials have unfettered discretion whether
or when to apply its Commercial Advertising Guidelines to a potential advertisers'

website. Potential advertisers have no way of knowing in advance that WMATA considers advertisers' websites, or portions of them, to be subject to WMATA's Commercial Advertising Guidelines. When WMATA does apply its Commercial Advertising Guidelines to a potential advertiser's website, or a portion of it, WMATA vastly expands the scope of its advertising restrictions and provides unfettered discretion to the WMATA's censors.

**Causes of Action**

**First Cause of Action**
Infringement of Freedom of Speech
First Amendment

75.     White Coat incorporates the allegations contained in the preceding paragraphs as if set forth fully herein.

76.     The challenged advertising guidelines/prohibitions, and/or WMATA's and Clarke's interpretation and implementation of those guidelines/prohibitions, are not capable of reasoned application on their face or as-applied to White Coat's proposed advertisements, in violation of the First Amendment to the United States Constitution.

77.     The challenged advertising guidelines/prohibitions, and/or WMATA and Clarke's  interpretation and implementation of those guidelines/prohibitions, give WMATA and Clarke unfettered discretion in enforcement, in violation of the First Amendment to the United States Constitution.

78.    White Coat has suffered and will continue to suffer irreparable harm and deprivation of its rights because of WMATA's unconstitutional Commercial Advertising Guidelines/prohibitions and practices.

## Second Cause of Action
### Vagueness
### Fifth & Fourteenth Amendments

79.    White Coat incorporates the allegations contained in the preceding paragraphs as if set forth fully herein.

80.    The challenged Commercial Advertising Guidelines/prohibitions are not clearly defined such that a person of ordinary intelligence can readily determine whether an advertisement is allowable or prohibited.

81.    The criteria WMATA and Clarke used and are using to prohibit White Coat's advertisements are not clearly defined such that a person of ordinary intelligence can readily determine whether an advertisement is allowable or prohibited. Such vagueness also contributes to the unfettered discretion exercised by WMATA and Clarke.

82.    The challenged advertising guidelines/prohibitions, and/or WMATA and the other Defendants' interpretation and implementation of those guidelines/prohibitions, violate WCW's rights under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

83.    White Coat has suffered and will continue to suffer irreparable harm and the deprivation of its rights because of WMATA and Clarke's unconstitutional Commercial Advertising Guidelines/prohibitions and practices.

## Request for Relief

White Coat requests that this Court:

a.    Declare that Defendant has violated and is violating White Coat's rights under the First and Fifth Amendment to the United States Constitution;

b.    Declare that Commercial Advertising Guideline 9's prohibition against "[a]dvertisements intended to influence members of the public regarding an issue on which there are varying opinions" in WMATA's Commercial Advertising Guidelines violates the First Amendment on its face;

c.    Declare that Commercial Advertising Guideline 9's prohibition against "[a]dvertisements intended to influence members of the public regarding an issue on which there are varying opinions" in WMATA's Commercial Advertising Guidelines violates the First Amendment as applied to White Coat's proposed ads;

d.    Declare that Commercial Advertising Guideline 13's prohibition against "Advertisements that support or oppose an industry position or industry goal without any direct commercial benefit to the advertiser" in WMATA's Commercial Advertising Guidelines violates the First Amendment on its face;

e.    Declare that Commercial Advertising Guideline 13's prohibition against "Advertisements that support or oppose an industry position or industry goal without any direct commercial benefit to the advertiser" in WMATA's

24

Commercial Advertising Guidelines violates the First Amendment as applied to White Coat's proposed ads;

f.      Declare that Commercial Advertising Guideline 14's prohibition against "Advertisements that are intended to influence public policy" in WMATA's Commercial Advertising Guidelines violates the First Amendment on its face;

g.      Declare that Commercial Advertising Guideline 14's prohibition against "Advertisements that are intended to influence public policy" in WMATA's Commercial Advertising Guidelines violates the First Amendment as applied to White Coat's proposed ads;

h.      Declare that Commercial Advertising Guideline 9's prohibition against "[a]dvertisements intended to influence members of the public regarding an issue on which there are varying opinions" in WMATA's Commercial Advertising Guidelines is vague, in violation of the Fifth and Fourteenth Amendments, on its face;

i.      Declare that Commercial Advertising Guideline 9's prohibition against "[a]dvertisements intended to influence members of the public regarding an issue on which there are varying opinions" in WMATA's Commercial Advertising Guidelines is vague, in violation of the Fifth and Fourteenth Amendments, as applied to White Coat's proposed ads;

j.      Declare that Commercial Advertising Guideline 13's prohibition against "Advertisements that support or oppose an industry position or industry goal without any direct commercial benefit to the advertiser" in WMATA's

25

Commercial Advertising Guidelines is vague, in violation of the Fifth and Fourteenth Amendments, on its face;

k.    Declare that Commercial Advertising Guideline 13's prohibition against "Advertisements that support or oppose an industry position or industry goal without any direct commercial benefit to the advertiser" in WMATA's Commercial Advertising Guidelines is vague, in violation of the Fifth and Fourteenth Amendments, as applied to White Coat's proposed ads;

l.    Declare that Commercial Advertising Guideline 14's prohibition against "Advertisements that are intended to influence public policy" in WMATA's Commercial Advertising Guidelines is vague, in violation of the Fifth and Fourteenth Amendments, on its face;

m.    Declare that Commercial Advertising Guideline 14's prohibition against "Advertisements that are intended to influence public policy" in WMATA's Commercial Advertising Guidelines is vague, in violation of the Fifth and Fourteenth Amendments, as applied to White Coat's proposed ads;

n.    Grant White Coat preliminary and permanent injunctive relief ordering Defendant Clarke to accept and display White Coat's proposed advertisement on terms no less favorable than those given to other advertisers;

o.    Grant White Coat preliminary and permanent injunctive relief enjoining Defendant Clarke, his employees, agents, successors, and assigns, and all persons acting in concert with them, from continuing to enforce Guidelines 9, 13, and 14 of WMATA's Guidelines Governing Commercial Advertising;

p.      Grant such other and further relief as the Court deems appropriate.


Date:  April 8, 2024                    Respectfully submitted,

                                        /s/ Matthew Strugar
                                        Matthew Strugar (D.C. Bar No. 1010198)
                                        Law Office of Matthew Strugar
                                        3435 Wilshire Blvd., Suite 2910
                                        Los Angeles, CA 90010
                                        323-696-2299
                                        matthew@matthewstrugar.com

                                        Vanessa Shakib (D.C. Bar No. 1753580)
                                        Advancing Law for Animals
                                        409 N. Pacific Coast Highway, #267
                                        Redondo Beach, CA 90277
                                        202-996-8389
                                        vshakib@advancinglawforanimals.org